No. 2206

Second Circuit

-------

**LOUISIANA IRON & SUPPLY CO. v. GALLOWAY**

-------

(April 8, 1927. Opinion and Decree)

-------

(*Syllabus by the Editor*)

1. **Louisiana Digest—Sales—Par. 216, 218.**

Were the seller of second-hand pipe to be used for the special purpose of laying a pipe line to convey oil informs the buyer that he does not want to sell the pipe without inspection, and some inspection of the pipe was made by the representative of the buyer before delivery, the seller did not expressly warrant the pipe as fit for a pipe line but merely gave the warranty implied by law.

2. **Louisiana Digest—Sales—Par. 222, 232.**

Articles 2545 and 2531 of the Civil Code have reference to damages to be paid by the seller who knows the vice of the thing he sells and omits to declare it, but do not apply to latent defects in the material sold.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. T. F. Bell, Judge.

Action by Louisiana Iron & Supply Company against James Galloway.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Cook & Cook, of Shreveport, attorneys for plaintiff, appellee.

Galloway & Johnson, of Shreveport, attorneys for defendant, appellant.

WEBB, J. In this action plaintiff, Louisiana Iron & Supply Company, a partnership, sought to obtain judgment against defendant, James Galloway, for the sum of six hundred and thirty-eight and 36-100 dollars with interest, the balance due on the price of a quantity of two-inch pipe sold by plaintiff to defendant.

Defendant admitted the sale and the price, and sets up in defense that the pipe was sold to him with an express warranty against defects and for the express purpose of being used in constructing a pipe line for conveying fuel oil a distance of about two miles to a point where defendant was drilling or was about to begin drilling a well, and that the pipe was defective, and after the pipe line had been laid and when oil was attempted to

be pumped through the line, the defects, consisting of holes and splits, appeared in the pipe, rendering it impossible to deliver oil to the place where the well was to be drilled, and the line had to be repaired by taking out several hundred feet of the pipe, of the sale value or price of fifty and 40-100 dollars, and that the delays incident to the repairs, during which time defendant was unable to drill, had caused defendant to sustain a loss of two hundred dollars, the rental which he was paying on the drilling outfit, and the cost of repairing the line and hauling additional pipe of two hundred and seventeen and 50-100 dollars, and that by reason of the defects a quantity of oil of the value of forty and 50-100 dollars was lost, which amounts, aggregating five hundred and eight and 40-100 dollars, he sought to have deducted from the balance due on the price.

On trial judgment was rendered against defendant in the sum of six hundred and twenty-three and 96-100 dollars, with interest, as prayed for, and defendant appealed.

## OPINION

The evidence shows that defendant, who was about to begin drilling a well, desired to construct a pipe line of about two miles in length for the purpose of conveying fuel oil to the place where drilling operations· were to be conducted, and that he called upon plaintiff, which appears to be a dealer in pipe, with the view of purchasing such quantity of two-inch pipe as he thought necessary to construct the line, and that at the time he informed plaintiff, who was represented by one of the partners, of the length of the ·line and of its purpose, and that the pipe would be subjected to considerable pressure, and was informed by plaintiff that it had on hand a lot of second-hand pipe of the size

desired and at the price of nine cents per foot, and defendant states that plaintiff informed him that the pipe was "as good as new", while defendant states that he informed plaintiff that the pipe was good and "looked like new" but he would not sell it to plaintiff unless inspected.

Following these negotiations, defendant, represented by his employee, called at plaintiff's place to get the pipe and the pipe, as delivered, was inspected by the representative of defendant, and one of the members of plaintiff partnership, and the quantity of pipe alleged and admitted to have been sold was delivered to defendant.

Defendant had rented a drilling outfit at forty dollars per day, which appears to have been placed in position at about the same time the pipe line was constructed, and, all being ready, defendant attempted to pump the oil through the line, but no oil reached the place where the drilling operations were to be carried on, and defendant inspected the pipe line and found that the oil was escaping from the line through holes in the pipe where it had rusted and where it had given way or split under the pressure from the pump, and plaintiff then proceeded to repair the line, taking our five hundred and sixty feet of the pipe which had split, and driving pegs into holes in other parts of the line, which work consumed some days and involved considerable expense, and some oil escaped from the pipe, and the drilling operations were delayed, while the rent of the drilling outfit continued. The evidence does not show with any degree of certainty the exact time it required to repair the line nor the expense of repairs nor the amount of oil which escaped.

While from this preliminary statement of the evidence it may appear that the

cause should be remanded in order to permit plaintiff to offer additional evidence as to the amount of the damages, we do not think this necessary for the reasons hereafter stated.

It is apparent that the claim made for the return of the price of the pipe found to be defective is for the reduction of the price, and it appears from the judgment this claim was allowed, in that the evidence shows that five hundred and sixty feet of the pipe was defective, and that plaintiff had furnished defendant with four hundred feet additional pipe, leaving a balance of one hundred and sixty feet at nine cents per foot, which is accounted for in the judgment, which is fourteen and 40-100 dollars less than the amount claimed, and as plaintiff did not appeal nor answer the appeal that item is settled.

·The other items appear to be considered by the parties as relating solely to the damages sustained by the defendant, and as arising from the loss sustained as an incident to the loss of time during which the pipe line was being repaired and expenses incident to the repairs, and defendant contends that he is entitled to have such damages set off against the balance due on the purchase price, and no question is raised as to the form of the demand.

The defendant apparently basis his right to damages on the following positions:

First, that there was an express warranty that the pipe sold was suitable to be used in the construction of a pipe line such as defendant desired to construct, and that the line would serve the purposes for which it was constructed, and it being found that the line as constructed with the pipe did not accomplish the purpose of its construction, plaintiff should be held to respond for the damages incident to putting the line in condition.

Second, that the plaintiff, being a dealer in pipe and having sold same, must be held to have been aware of its defects and liable not only for the return or reduction of the price but also for all damages sustained by defendant which could be directly traced to the use of the defective pipe in constructing the pipe line.

Considering these positions in their order.

### I.

We assume that this contention is based upon the evidence, which shows that defendant had informed the plaintiff of the use for which he desired the pipe, that is, "to construct a pipe line two miles in length which would be subjected to considerable pressure", and upon plaintiff having told him that "he had some pipe of the size desired which was as good as new".

The plaintiff was a dealer in pipe; it was not engaged in the business of building pipe lines nor other construction work, and we do not think it could be said from the conversation between the parties that plaintiff had warranted that the pipe line, such as defendant desired, could be constructed with two-inch pipe, or that the conversation indicated that plaintiff intended to extend in any manner the warranty which would be placed upon him as a seller of pipe.

On the other hand, it being stated by one of the members of plaintiff firm that he had told the defendant that "he did not want to sell the pipe without inspection" which was not denied by defendant) and the evidence showing there was some inspection of pipe by the representative

of defendant prior to delivery, indicates that plaintiff was rather attempting to restrict any warranty which might be imposed on it by law, rather than to extend such warranty.

Aside from this, however, pipe is a material which may be used in constructing many different works where the damages which might result from the use of defective pipe or material would be as to the amount dependent upon the work in which it was used, and the mere fact of a dealer having knowledge that the article which he sells and which could be used in the construction of many different works would be used in one work rather than another to which it was by nature adapted does not indicate that the dealer had in contemplation the damages which might result from such special use rather than the damages which might result from the use of the pipe in any other work to which it was adapted, and we do not think, from any point of view, under the evidence, it could be said that the plaintiff had expressly warranted the pipe for any purpose, or that there was any warranty beyond that implied by law.

## II.

In this contention the defendant argues that plaintiff, being a dealer in pipe, must be held to have had knowledge of the latent defects in the pipe and that it is responsible for the damages sustained by the defendant incidental to the repair of the pipe line, which became necessary by reason of the defects in the pipe, basing his position on Article 2545 of the Civil Code, which reads as follows:

"The seller who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages."

And upon the illustrations cited on Doyle vs. Fuerst & Kraemer, 129 La. 838, 56 South. 906, from Mourion and Pothier, where it is said that an artisan, manufacturer or dealers who sells casks in which wine is to be stored warrants the casks to be suitable for that purpose, and would be liable in damages which might result from the loss of the wine by reason of the latent defects in the cask.

The article quoted seems to give the right to recover damages only in case the seller knows of the defects and fails to advise the purchaser of same (Barclay vs. Conrad, 7 La. 261; Peterkin vs. Martin, 30 La. Ann. 894; Iberia Cypress Co. vs. Van Scholtin, 121 La. 72, 46 South. 105; Article 2531, C. C.); but conceding that a dealer in articles which are in themselves complete and designed for a special purpose who sells such an article which is affected with latent defects which render it useless or of less value, may be held for damages which may be sustained by the purchaser as the result of latent defects in addition to the return of reduction of the purchase price, we do not think the exception can be applied to one who sells material even though the seller knows the purpose for which the material will be used.

The judgment made full allowance for the material shown to be defective and which was not used by the defendant, and the judgment is affirmed.